```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY

JOHN BRANT,                        :   Civil A. No. 07-862(NLH)(AMD)
                                   :
          Plaintiff,               :
                                   :
     v.                            :   OPINION
                                   :
ELIZABETH BURNS,                   :
HINDI CAMARLINGO, and              :
LOUIS MARTENALLI                   :
                                   :
          Defendants.              :
```

**Appearances**:

KIT APPLEGATE
1300 ROUTE 73, SUITE 211
MOUNT LAUREL, NJ 08054

    On behalf of plaintiff

RAHAT N. BABAR
DEPARTMENT OF LAW & PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
P.O. BOX 116
TRENTON, NJ 08625

    On behalf of defendants

**HILLMAN**, **District Judge**

    Presently before the Court are defendants' motions to dismiss and for summary judgment, and plaintiff's motion for partial summary judgment, on plaintiff's claims of negligence and constitutional violations against defendants. Oral argument was held on March 29, 2010. For the reasons expressed below, the Court will find in defendants' favor.

**BACKGROUND**

In 2003, the New Jersey Superior Court found plaintiff, John Brant, not guilty by reason of insanity[1] to criminal mischief and other criminal charges. As a result, plaintiff was involuntarily committed to a state psychiatric hospital pursuant to State v. Krol, 68 N.J. 236 (1975) and N.J.S.A. 2C:4-8. After being placed in two other facilities, on September 26, 2005, plaintiff was transferred to Ancora Psychiatric Hospital in Hammonton, Atlantic County, New Jersey.[2] While at Ancora, plaintiff's treatment team consisted of defendant Dr. Elizabeth Burns, who was plaintiff's clinical psychiatrist, defendant Dr. Heidi Camerlengo, who was plaintiff's psychologist, and defendant Louis Martelli, who was plaintiff's social worker.

During his commitment, plaintiff was subject to an unrelated outstanding warrant in Lakewood Township, Ocean County, New Jersey for his arrest for traffic fines. Plaintiff expressed to his treatment team that he wished to be transferred to the jail in Lakewood under "detainer status," and he demanded the transfer

---

[1] Plaintiff has been diagnosed with bipolar affective disorder and antisocial personality disorder.

[2] Plaintiff was originally placed at Ann Klein Forensic Center, transferred to Greystone Psychiatric Hospital, but then transferred back to the more secure Ann Klein Forensic Center after plaintiff escaped twice from Greystone. Eventually, the staff at Ann Klein deemed plaintiff capable of returning to a less restrictive facility, and plaintiff was transferred to Ancora Psychiatric Hospital in September 2005.

under threats of escape.  After consideration of numerous factors, and with the ultimate goal of plaintiff returning to the more-secure Ann Klein Forensic Center, plaintiff's treatment team determined to discharge plaintiff to the custody of the Lakewood Township Police Department.

In order to facilitate this transfer, the treatment team made arrangements with the Lakewood Township police to transfer plaintiff to the jail there.  The team also obtained an order from plaintiff's Krol judge, who ordered a detainer for plaintiff's arrest so that he would not be released from the Lakewood Township police custody upon the resolution of his outstanding warrant.[3]  Dr. Burns drafted a detailed discharge report and aftercare plan, both of which, along with a thirty-day supply of medication, were sent with plaintiff to Lakewood Township.

On November 18, 2005, plaintiff was discharged from Ancora and the Lakewood Township police transferred him to the Lakewood Township police station.[4]  Despite the detainer issued by the Krol judge, the Lakewood Township Police Department released

---

[3]As discussed in more depth below, it appears that the detainer issued by the Krol judge may not have been properly distributed such that it would have alerted the Lakewood Township police as to its existence.

[4]It was apparently the impression of plaintiff's treatment team that plaintiff would be transferred to the Ocean County Jail, rather than to the police station.

3

plaintiff after he paid his fines.  Plaintiff believed he was "free," which he indeed was, and he took the bus to his home.  For four days plaintiff visited various places and socialized with his friends.  According to plaintiff, on November 21, 2005, he was in Pemberton, New Jersey with his friends, but they had left and he needed a ride home.  Plaintiff pulled out some money, showed it to strangers who had a car, and told them he would pay them for a ride home.  Instead of driving him home, they took him to a different location.  One of the people exited and then reentered the car with a gun.  Plaintiff panicked because he did not know whether the person was going to shoot him or rob him, so he grabbed the gun.  A shot went off, and a bullet hit plaintiff in the right knee.[5]  Plaintiff's femur bone was shattered and required two plates and eight screws to reconstruct.  Plaintiff eventually returned to Ancora on November 28, 2005.

In February 2007, plaintiff filed a *pro se* complaint against defendants, claiming that they committed professional malpractice in their decision to discharge him, as well as violated his constitutional rights because of their deliberate indifference to his serious medical need and because of their failure to provide substantive and procedural due process.  He filed an amended complaint in October 2007, and then on July 29, 2009, plaintiff

---

[5]Plaintiff cannot recall much about his four days outside of custody, and he provides limited details about his activities and the circumstances of the car ride and shooting.

4

filed a second amended complaint through counsel. Plaintiff's current complaint asserts the following claims against defendants: Count I, negligence against Dr. Burns because she breached her duty of care by releasing plaintiff even though he had "impaired" insight and "poor" judgment; Count II, abandonment against Dr. Burns[6]; Count III, violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq., against all defendants because they deprived plaintiff of his substantive right to medical care and treatment; Count IV, violation of plaintiff's substantive due process rights under the Fourteenth Amendment to the United States Constitution, against all defendants because they deprived plaintiff of his substantive right and liberty interest to protection by the State of New Jersey from harm by others; and Count V, violation of plaintiff's procedural due process rights under the Fourteenth Amendment to the United States Constitution, against all defendants because they violated plaintiff's procedural due process rights by discharging him without following the statutory procedures that govern such discharges or otherwise providing procedures that would satisfy plaintiff's constitutional right to due process of law.

Dr. Burns has moved to dismiss plaintiff's professional negligence claims against her because of plaintiff's failure to provide an affidavit of merit. Dr. Burns and the other

---

[6]Plaintiff concedes this claim is duplicative of Count I.

5

defendants have moved for summary judgment in their favor on the rest of plaintiff's claims against them.  Plaintiff has also moved for partial summary judgment in his favor on his negligence claim and New Jersey Civil Rights violation claim against Dr. Burns.

## DISCUSSION

### A. Jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, as well as pursuant to the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Standards for Motion to Dismiss and Summary Judgment

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) for a plaintiff's failure to file an affidavit of merit in compliance with N.J.S.A. 2A:53A-27, "the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and extraordinary circumstances do not apply."  Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 154 (2003).

When considering a summary judgment motion, summary judgment is appropriate where the Court is satisfied that "the pleadings,

6

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

**C.   Analysis**

The crux of all of plaintiff's claims hinge on the propriety of his discharge from Ancora.  As a Krol patient, the discharge of plaintiff had to follow certain procedures.  New Jersey statute requires that Krol hearings be held periodically so that the court can determine whether and how the commitment should continue.  N.J.S.A. 2C:4-8(b)(3).  Correspondingly, any change in treatment facility, including discharge, must be approved by the court.  Id.  In addition, Ancora has its own set of internal procedures concerning the discharge of a Krol patient.  See Pl. Ex. F, Docket No. 47 at 44-45.  Ancora's procedures provide that the Special Status Patient Review Committee (SSPRC) must review and endorse a treatment team's discharge recommendations, and the discharge order must be approved in writing by the Krol judge assigned to the patient's case.

Plaintiff claims that defendants' failure to follow these procedures caused him to be shot in the leg and suffer serious pain and suffering.  Plaintiff attributes this injury to Dr. Burn's negligence in her professional capacity as his clinical

7

psychiatrist, as well as to all defendants' violation of his civil and due process rights.  Plaintiff's claims fail, however, as a matter of law.

There are numerous reasons why plaintiff's claims are unsupportable, and defendants have properly articulated many of those reasons.  The primary reason they fail is plaintiff's inability to establish proximate cause, which is a requirement to prove all of plaintiff's claims.[7]

For both tort claims and constitutional and civil rights violation claims, a plaintiff must show that the defendant's wrongful conduct was a substantial factor in bringing about harm to the plaintiff. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (explaining that "as in any tort case, [a plaintiff bringing claims for constitutional violations] must demonstrate that defendants' actions were the proximate cause of the harm he suffered").  Proximate cause is a term that draws "judicial lines beyond which liability will not be extended" and "is

---

[7] Defendants point out that in addition to plaintiff's failure to prove proximate causation, plaintiff's common law tort claims fail as a matter of law because: (1) of his failure to provide an affidavit of merit pursuant to N.J.S.A. 2A:53A-27, (2) defendants enjoy absolute immunity pursuant to N.J.S.A. 59:6-6; and (3) defendants have discretionary immunity pursuant to N.J.S.A. 59:3-2 and -3.  Defendants also argue that plaintiff's constitutional and civil rights claims fail as a matter of law because defendants are entitled to qualified immunity.  Because the Court finds that plaintiff cannot prove legal causation as to any of his claims, the Court will not address substantively defendants' other arguments.

fundamentally as an instrument of fairness and policy." Caputzal v. Lindsay Co., 222 A.2d 513, 517-18 (N.J. 1966). "Many years ago a case in [New Jersey] hit it on the head when it was said that the determination of proximate cause by a court is to be based 'upon mixed considerations of logic, common sense, justice, policy, and precedent.'" Id. (citation omitted).

A proximate cause, however, "need not be the sole cause of harm." James, 820 A.2d at 39 (citation omitted). "[A] tortfeasor will be held accountable if its negligent conduct was a substantial factor in causing the injury even when there are other 'intervening causes which were foreseeable or were normal incidents of the risk created.'" Id. (citation omitted).

Foreseeability as to these intervening causes is key. No liability is imposed onto a defendant where there are "highly extraordinary" consequences resulting from the defendant's conduct. Id. at 43. Further, "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about." Egervary, 366 F.3d at 246 (citing Restatement (Second) of Torts § 440-441 (1965)). Additionally, although the issue of proximate cause is typically one for a jury, non-liability for the highly extraordinary consequence or superseding

9

cause is a question of law for the court. <u>J.S. v. R.T.H.</u>, 714 A.2d 924, 935 (N.J. 1998); <u>Caputzal</u>, 222 A.2d at 518.

In this case, even assuming that Dr. Burns breached her duty of care as a clinical psychiatrist by discharging plaintiff into the hands of the Lakewood Township police, and all defendants deprived plaintiff of his substantive right to medical care and protection, and did not follow the proper procedures in discharging plaintiff, defendants cannot be liable for plaintiff's injuries because the harm plaintiff encountered was caused by a superseding act.[8]

On November 9, 2005, over a week prior to his discharge,

---

[8] Because the existence of a superseding act is dispositive to the proximate cause issue, the Court will not decide whether the circumstances in this case support a finding that the harm suffered by plaintiff was highly extraordinary. The Court notes, however, that on one hand, it is not unforeseeable, and therefore not highly extraordinary, that plaintiff's criminal history and mental illness would lead him into a car occupied by a stranger brandishing a gun which eventually discharges. The issue we need not resolve is whether the plaintiff's own actions, the independent actions of third parties, or the remoteness of the injury to the initial cause negate a finding of foreseeability. <u>Compare</u> <u>Jensen v. Schooley's Mountain Inn, Inc.</u>, 522 A.2d 1043 (N.J. Super. Ct. App. Div.), <u>cert. denied</u>, 528 A.2d 11 (N.J. 1987) (finding that serving alcohol to visibly intoxicated patron was not a proximate cause of injuries sustained when the patron subsequently drove his car eight miles, parked, climbed a tree, fell out of the tree, rolled into the river and drowned) and <u>Jakelsky v. Friehling</u>, 33 F. Supp. 2d 359, 367 (D.N.J. 1999) (explaining that a reasonable person could not predict that permitting an emotionally unstable person to return to work would lead to a fatal car accident), <u>with</u> <u>J.S. v. R.T.H.</u>, 714 A.2d 924 (N.J. 1998) ("It does not seem highly extraordinary that a wife's failure to prevent or warn of her husband's sexual abuse or his propensity for sexual abuse would result in the occurrence or the continuation of such abuse.").

10

plaintiff's Krol judge, Judge Conte of the New Jersey Superior Court in Bergen County, was informed of plaintiff's treatment team's plan to send plaintiff to Lakewood Township on the outstanding warrant unrelated to his Krol status.  Apparently agreeing to the treatment team's plan, Judge Conte issued an "Order for Arrest" to the "Bergen County Prosecutor or Any Law Enforcement Officer," wherein it stated that plaintiff was subject to a detainer by the Superior Court, and directed "any law enforcement officer" "to immediately arrest this Defendant and produce the Defendant before the Court or hold in custody until the next regular Court session."  Def. Ex. F, Docket No. 45-12.  The warrant was sent to the "Bergen County Clerk," the "Fugitive Squad, Prosecutor's Office," the "Sheriff's Department," the "Bail Unit," "Captain Pellegrino at the Jail Annex," and "Jay Mullen."  Id.  The purpose of this order was to ensure that plaintiff would remain in custody after his stay in the Ocean County Jail.

When plaintiff was discharged from Ancora, which plaintiff alleges constituted negligence and violated his constitutional and civil rights, he was released into the custody of the Lakewood Township Police Department pursuant to Lakewood Township's outstanding warrant.  Although it does not appear that any of his treatment team members were present when the Lakewood Township police officers arrived to transport plaintiff,

11

accompanying plaintiff was the discharge summary report prepared by Dr. Burns, as well as a thirty-day supply of medication. Once plaintiff satisfied his obligation to Lakewood Township, pursuant to Judge Conte's November 9, 2005 warrant, plaintiff was to remain detained until Lakewood Township police could make arrangements for him pursuant to Judge Conte's order. However, despite Judge Conte's detainer, and plaintiff's discharge summary which indicated that he was on <u>Krol</u> status and under the supervision of his <u>Krol</u> judge, Lakewood Township police released plaintiff from the station after he paid $340 in outstanding traffic fines.

As stated above, even if plaintiff's discharge from Ancora can be considered a common law tort and a constitutional tort, and acknowledging that "but for" his discharge he never would have been shot, the Lakewood Township Police Department's failure to retain plaintiff on his outstanding warrant, precipitated by the apparent mishandling of Judge Conte's arrest warrant by Bergen County, are superseding acts which break the causal chain.

It must first be mentioned, however, that although Lakewood Township improperly released plaintiff into the community, thus setting in motion the events after his discharge from Ancora, the record evidence shows that Lakewood Township most likely was unaware that it was supposed to retain plaintiff. Based on undisputed testimony by the treatment team, Judge Conte's

12

chambers informed Louis Martelli over the phone that Judge Conte issued a warrant for plaintiff's arrest, but no one on the team actually received a copy of Judge Conte's warrant in order to provide it to the Lakewood Township police officers along with plaintiff's discharge summary when they picked him up from Ancora. It also appears undisputed that no one at Ancora specifically informed the officers that plaintiff was subject to a warrant issued from Bergen County, or that plaintiff was not to be released if he should satisfy his outstanding obligations to Lakewood Township. Further, even though the discharge report contained a paragraph summarizing plaintiff's Krol status, the existence of Judge Conte's warrant, and the plan for plaintiff's chain of custody, this information was on the last of five, densely typed pages of a report titled, "DISCHARGE/RELEASE SUMMARY." It is unrealistic to presume that the Lakewood Township police officers tasked to transport plaintiff from Ancora to Lakewood Township headquarters would thoroughly read such a report to glean the necessary details of the transfer and retention of plaintiff.

Additionally, plaintiff testified, and defendants have not refuted, that prior to being released, Lakewood Township police ran a warrants check on plaintiff, and Judge Conte's warrant did not appear. Thus, without any additional evidence to the contrary, it seems that Bergen County court and law enforcement

13

personnel did not properly record and distribute Judge Conte's arrest warrant, and that the Lakewood Township Police Department's failure to retain plaintiff was understandable.

The fact that the Lakewood Township Police Department's release of plaintiff was probably not due to any negligence of their part does not, however, mean that Dr. Burns or the other treatment team members are liable for plaintiff's injuries. To determine whether defendants caused plaintiff's harm, it must be shown that Bergen County's mishandling of Judge Conte's warrant and Lakewood Township's release of plaintiff were foreseeable events to defendants, even if they were negligent in discharging plaintiff. The Court finds that those two events are not normal incidents of the risk created by plaintiff's discharge.

When Dr. Burns determined to release plaintiff, she understood that (1) Judge Conte had agreed to the treatment team's plan, (2) Judge Conte had issued an arrest warrant for plaintiff's arrest following the resolution of the Lakewood Township charges, (3) the Lakewood Township police were to transport plaintiff directly from Ancora to the Ocean County Jail, and (4) plaintiff would be retained in that jail until he was returned to Bergen County. Thus, Dr. Burns and the other treatment team members believed that when plaintiff was discharged from Ancora, appropriate measures were in place to ensure that plaintiff would not be released into the community.

14

Further, they believed that the legal system, over which they had no control, would properly effectuate their plan. It is beyond the contemplation of mental health professionals, however, that Judge Conte's order would not be properly disseminated so that the Lakewood Township police department would not be alerted to it, and therefore fail to retain plaintiff pursuant to it.

"A foreseeability test is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. Foreseeability means that which it is objectively reasonable to expect, not merely, what might conceivably occur." Arvanitis v. Hios, 705 A.2d 355, 359 (N.J. Super. Ct. App. Div. 1998) (citing Yun v. Ford Motor Co., 143 N.J. 162, 165, 669 A.2d 1378 (1996) ("'In a sense, in retrospect almost nothing is entirely unforeseeable.'")). Moreover, both state tort law and constitutional law are based on the premise that "a man [is] responsible for the natural consequences of his actions." Egervary, 366 F.3d at 248 (citing Monroe v. Pape, 365 U.S. 167, 187 (1961)). In order to impose liability upon another for his actions, a plaintiff "must prove not only that the defendant's actions were a but-for cause of the plaintiff's injuries but also that they were a proximate cause." Id. at 247. Proximate cause, however, does not permit the Court to go back in time with the hindsight of a time traveler. Friehling, 33 F. Supp. 2d at 367 (citing Yun, 143 N.J. at 165).

In hindsight, considering what misfortune befell plaintiff, perhaps plaintiff's treatment team should have not acquiesced to plaintiff's demands to satisfy his warrant in Lakewood Township and instead should have waited until plaintiff's November 28, 2005 scheduled <u>Krol</u> hearing to have plaintiff directly transferred back to Bergen County.  That course of action would have more completely complied with both the <u>Krol</u> standard and Ancora internal procedures.  Defendants, however, could not have anticipated the apparent mistakes by the legal system and law enforcement that were the superseding causes of plaintiff's injuries.[9]  Indeed, at plaintiff's <u>Krol</u> hearing on January 20, 2006, Judge Conte commented, "In the meantime if my order would have been honored you never would have been shot or maybe killed.  That's what happened.  You got shot, broke your leg, shot in the femur or your knee."  (Compl. ¶ 29.)  Proximate causation is an instrument of fairness, and in this case, "logic, common sense, justice, policy, and precedent" all direct that defendants cannot be held liable for plaintiff's injuries.  Consequently, judgment must be entered in defendants' favor as a matter of law.

---

[9]It could also be argued that a succession of other superseding acts by additional actors resulted in plaintiff's injury.  For example, but for plaintiff's friends stranding him in Pemberton, plaintiff would have never asked for a ride from strangers; but for the backseat passenger who possessed a gun, plaintiff would have never thought he was being robbed and grab the gun.  The numerous intervening actors between Dr. Burns' discharge of plaintiff and his shooting demonstrates further why defendants cannot be held liable for plaintiff's injury.

## **CONCLUSION**

For the reasons expressed above, defendants' motion for summary judgment shall be granted, Dr. Burns' motion to dismiss will be denied as moot, and plaintiff's motion for partial summary judgment shall be denied.  An appropriate Order will be entered.


Date: March 31, 2010                    s/ Noel L. Hillman
                                        NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey